IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

WELLS FARGO BANK, N.A.
as successor by consolidation to Wells
Fargo Bank MN, N.A. as Trustee for
the registered holders of Banc of
America Commercial Mortgage Inc.,
Commercial Mortgage Pass-Through
Certificates, Series 2003-2, by and
through it Special Servicer, ORIX
Capital,

   Plaintiff,

      v.

MITCHELL'S PARK, LLC, et al.,

   Defendants.

CIVIL ACTION FILE
NO. 1:10-CV-3820-TWT

ORDER

This is a breach of contract action. It is before the Court on the Defendants' Renewed Motion to Dismiss for Lack of Subject Matter Jurisdiction [Doc. 65], the Defendants' Motion for Partial Summary Judgment [Doc. 66], and the Plaintiff's Motion for Summary Judgment [Doc. 67]. For the reasons set forth below, the Defendants' Renewed Motion to Dismiss for Lack of Subject Matter Jurisdiction [Doc. 65] is DENIED, the Defendants' Motion for Partial Summary Judgment [Doc.

66] is DENIED, and the Plaintiff's Motion for Summary Judgment [Doc. 67] is GRANTED.

I. Background

In July 2003, Bridger Commercial Funding LLC loaned Defendant Mitchell's Park, LLC $5.55 million to build an apartment complex. (Am. Compl. Ex. A, at 1). The loan was memorialized through a Promissory Note Secured by Security Deed, a Deed to Secure Debt and Absolute Assignment of Rents and Leases and Security Agreement, and various additional loan documents. (Am. Compl. Exs. A, B, & C, the "Loan Documents"). Defendant Bright signed a Guaranty on the Note. (Am. Compl. Ex. C, at 8). Through subsequent assignments, the legal and equitable title to and interests in the loan were acquired by Plaintiff Wells Fargo Bank, N.A., as successor by consolidation to Wells Fargo Bank MN, N.A. as Trustee for the registered holders of Banc of America Commercial Mortgage Inc., Commercial Mortgage Pass-Through Certificates, Series 2003-2, by and through it Special Servicer, ORIX Capital ("Wells Fargo"). (See Am. Compl. Exs. D & E).

The transaction was structured as a non-recourse transaction, with the lender's recovery "limited solely to the Property and the Collateral." (Note ¶ 8.1). However, the Loan Documents included provisions whereby Defendants Mitchell's Park and Bright could face full recourse liability. The Limited Recourse Liability Clause

imposed additional liability in the case of waste in collateral secured by the Note or if the borrowers failed to apply rents to the lender. (Note ¶ 8.2). The Note also provides for the lender to recover fees and costs of collection. (Note ¶ 8.3).

Additionally, the Note included a Full Recourse Liability Clause. The last clause of ¶ 8.2 of the Note provides that if the borrower fails to maintain the "single-purpose entity" requirements contained in Exhibit B to the Security Deed, then "Lender shall have the right to seek a personal judgment against Borrower on this Note and under any other Loan Document with respect to any and all indebtedness secured thereby." (Note ¶ 8.2). The relevant single-purpose entity requirements listed in Exhibit B attached to the Security Deed require Mitchell's Park to "be solvent and pay its liabilities from its assets ... as the same shall become due," to be "a legal entity separate and distinct from any other entity... utiliz[ing] a separate telephone number and separate stationery, invoices, and checks," to "establish and maintain an office through which its business shall be conducted separate and apart from those of any of its affiliates," to "file its own tax returns," and to "maintain adequate capital for the normal obligations reasonably foreseeable in a business of its size and character." (Compl. Ex. B, ¶¶ 5, 9, 10, 11, 12).

On February 1, 2010, Mitchell's Park defaulted on the Note by failing to make the payments due. Wells Fargo contends that Mitchell's Park triggered the Full

Recourse Liability Clause by: (1) failing to pay obligations to its property manager and to Wells Fargo as they became due; (2) failing to maintain sufficient capital to pay obligations; (3) failing to operate the business in its own name and maintain and utilize a separate telephone number and office supplies; (4) failing to maintain an office sufficiently separate from other entities; and (5) failing to file separate tax returns. (Pl's. Br. in Supp. of Summ. J. at 13-17). On May 17, 2010, Wells Fargo notified the Defendants of the defaults, accelerated the Note, and demanded payment of all indebtedness. The Defendants did not pay the indebtedness, and, on July 6, 2010, Wells Fargo conducted a non-judicial foreclosure sale on the real property and other collateral. Wells Fargo obtained $2.1 million for the real property and $25,000 for the personal property. The Cobb County Superior Court confirmed the foreclosure sale. (Pl's. Br. in Supp. of Summ. J. at 9-10).

After applying the foreclosure proceeds, Wells Fargo contends that the Defendants still owe $3,693,078.76 because Mitchell's Park triggered the Full Recourse Liability Clause. (Pl.s' Br. in Supp. of Mot. for Summ. J. at 10). According to Wells Fargo, neither Bright nor Mitchell's Park has made any payments since February 1, 2010, and the total amount due as of April 30, 2012, including prejudgment interest and yield maintenance premium, is $4,243,881.06. (Id.)

II. Summary Judgment Standard

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The court should view the evidence and any inferences that may be drawn in the light most favorable to the nonmovant. Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970). The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). The burden then shifts to the nonmovant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).

III. Discussion

A. The Defendants' Renewed Motion to Dismiss for Lack of Subject Matter Jurisdiction

The Defendants have filed a motion to dismiss for lack of subject matter jurisdiction arguing that this Court lacks diversity jurisdiction when a trust is the plaintiff and the trustees are from the same state as the defendants. The Defendants filed a substantially similar motion on January 19, 2011, which this Court denied on June 15, 2011. (See Order Denying Motion to Dismiss, Doc. 22). The Defendants now contend that new authority should change this Court's determination. However,

as the Plaintiff points out, the new cases submitted by the Defendants address the citizenship of a trust for purposes of diversity. Here, as this Court's prior Order noted, the Plaintiff is suing as a trustee, and the citizenship of the trustee controls for the purposes of diversity jurisdiction. (Id.) The Defendants' renewed motion to dismiss should therefore be denied.

      B.    <u>The Defendants' Motion for Partial Summary Judgment on the Limited Guaranty</u>

The Defendants argue that the plain language of full recourse liability clause as printed in the Guaranty indicates that full recourse liability does not apply to the Guarantor, Defendant Bright. The relevant provision states that if a full-recourse exception is met, "Lender shall have the right to seek a personal judgment against *Borrower* on this Guaranty and under any other Loan Documents with respect to any and all indebtedness secured thereby." (Guaranty ¶ 1) (emphasis added). The Defendants contend that the use of "Borrower" in the above-quoted language is a misnomer and the normal rules of construction allow the Court to interpret it properly, construing liability against the Guarantor.

In <u>C.L.D.F. Inc. v. Aramore LLC</u>, 290 Ga. App. 271 ( 2008), the Georgia Court of Appeals construed a guaranty clause similar to the one here. When drafting the guaranty clause and associated lease, the parties in <u>C.L.D.F.</u> made a last-minute

change replacing the name of one of defendant's entities with another. The drafters made the changes throughout the documents except in the guaranty clause where the name of the tenant on the lease was not updated. The defendant signed and initialed both documents. Before the trial court, the defendant-guarantor argued that the guaranty was unenforceable because it misidentified the principal debtor, the tenant on the lease. The trial court granted summary judgment in favor of the lenders, and the appellate court confirmed.

In its decision, the court noted that it must construe the lease and the guaranty together, and that "if [the] intention [of the parties] is clear and it contravenes no rule of law and sufficient words are used to arrive at the intention, it shall be enforced irrespective of all technical or arbitrary rules of construction." Id. at 273 (quoting O.C.G.A. § 13-2-3). The court further noted that "in construing guaranties, they are to be taken as strongly against the party giving the guaranty." Id. (quoting Town Center Assoc. v. Workman, 227 Ga. App. 55, 58 (1997)) (internal quotation marks and alterations omitted). Because the lease and guaranty were executed at the same time and location, because the lease identified the guarantor, and because every page of the lease and guaranty bore the signature of the purported guarantor, the court concluded it was "not error for the trial court to correct an obvious error and interpret the Guaranty accordingly." Id.

Here, the situation is similar to C.L.D.F. Both the Note and the Guaranty were signed on July 9, 2003. (See Note, at 11; Guaranty, at 8). The Note references the Guaranty as a loan document, and the Guaranty identifies itself as a loan document. Defendant Bright executed the Guaranty as Guarantor, and his signature induced the lender to make the loan. (See Guaranty, at 8). Additionally, the recourse provisions in the Note and the Guaranty contain identical language, except for the replaced titles – one of which was erroneously replaced. (Compare Note ¶ 8.2 with Guaranty ¶ 1). This is an obvious mistake and does not require reformation of the contract. In these circumstances, the Court is satisfied that the parties intended for Defendant Bright to be the Guarantor on the Note including the full recourse liability provisions. Therefore, the Defendants' motion for partial summary judgment on the limited guaranty should be denied.

C. The Full Recourse Liability Clause Under These Circumstances Is Enforceable and Is Not a Liquidated Damages Clause

The Defendants move for partial summary judgment on the grounds that the Full Recourse Liability Clause, which is triggered by violations of the single-purpose entity requirements in the Security Deed, is an unenforceable penalty clause. The Defendants contend that the effective breach is the violation of the single-purpose entity requirements that triggered the Full Recourse Liability Clause, and that full recourse damages are disproportionate to the injury to Wells Fargo. It is undisputed

that Mitchell's Park: (1) failed to pay obligations to its property manager and to Wells Fargo as they became due; (2) failed to maintain sufficient capital to pay obligations; (3) failed to operate the business in its own name and maintain and utilize a separate telephone number and office supplies; (4) failed to maintain an office sufficiently separate from other entities; and (5) failed to file separate tax returns. (Compare Pl.s' Statement of Undisputed Material Facts ¶¶ 12-17 with Defs.' Resp. to Pl.s' Statement of Undisputed Material Facts ¶¶ 12-17).[1]

---

[1] While the Defendants do not dispute that they failed to adhere to the requirements listed in Exhibit B of the Security Deed, they contend that "[n]ot all of the items on Exhibit 'B' of the [Security Deed] are 'single-purpose entity requirements,' applying the common sense meaning of those words." The Defendants argue that had the lender "intended to make each and every item on Exhibit 'B' to the [Security Deed] a trigger for 'full recourse liability' ... it could have just said that on the Loan Documents." (Defs.' Resp. to Pl.s' Statement of Undisputed Material Facts n.2). The Defendants argue this because the Full Recourse Liability Clause imposes liability if "Borrower shall otherwise fail to maintain all of the single-purpose entity requirements set forth in Exhibit 'B' attached to the Security Deed." (Note ¶ 8.2). Because Exhibit B itself does not contain the language "single-purpose entity requirements," the Defendants argue that many of the provisions in Exhibit B do not relate to Mitchell's Park's single purpose of operating a residential apartment complex, and its violation should not trigger full recourse liability. The Court disagrees. The more reasonable interpretation is that the reference to Exhibit B included all of the requirements in Exhibit B which, although they do not relate to maintaining the single purpose of operating an apartment complex, do all relate to ensuring that Mitchell's Park retained its identity while repaying the loan. This interpretation is supported by the case law. The borrowers in Wells Fargo Bank, NA v. Cherryland Mall Limited Partnership, 812 N.W.2d 799 (Mich. Ct. App. 2011) argued that several items referred to as "single-purpose entity requirements" were unrelated to the borrower's maintaining a single purpose. Id. at 806-815. The court reviewed other cases with similar mortgage agreements and reviewed extrinsic

Wells Fargo contends that application of the Full Recourse Liability Clause is not a penalty because it allocates liability, not damages, and that the damages sought under the exception are what was owed under the loan -- actual damages. Wells Fargo is seeking in excess of $4 million through the non-recourse exception. (Pl.s' Br. in Supp. of Mot. for Summ. J. at 10). Wells Fargo claims that the effective breach was the Defendants' default and the violations of the single-purpose entity requirements merely triggered the full recourse clause. Wells Fargo further argues that the liquidated damages analysis is inapplicable because it seeks the amount due on the Note, which are the actual damages.

"The issue of whether a provision constitutes liquidated damages rather than a penalty is an issue of law." National Emergency Servs., Inc. v. Wetherby, 217 Ga. App. 42, 44 (1995). "To decide whether the provision is enforceable, the court must determine if (1) the injury caused by the breach is difficult or impossible to accurately estimate, (2) the parties intended to provide for damages rather than a penalty, and (3) the stipulated sum is a reasonable pre-estimate of the probable loss." Allied

---

evidence on the trade definition of single-purpose entity. The court concluded that "cases interpreting similar loan documents do not support defendants' position that all the covenants contained in [the single-purpose entity section] of the mortgage do not relate to maintaining [single-purpose entity] status." Id. at 814. The Court concludes that the reference to the "single-purpose entity requirements" in Exhibit B to the Security Deed refers to the character of all of the requirements in Exhibit B.

Informatics, Inc. v. Yeruva, 251 Ga. App. 404, 405 (2001). "The labels and forms of words used in a contract do not determine whether the provision is enforceable as liquidated damages." Lager's, LLC v. Palace Laundry, Inc., 247 Ga. App. 260, 266 (2000). The burden of showing that a provision of a contract is unenforceable lies with the defaulting party. Joyce's Submarine Sandwiches, Inc. v. California Public Employees' Ret. Sys., 195 Ga. App. 748, 749-50 (1990); Liberty Life Ins. Co. v. Thomas B. Hartley Constr. Co., 258 Ga. 808, 809 (1989). In cases of doubt, Georgia courts favor a construction which holds the stipulated sum to be a penalty and limits the plaintiff to a recovery of actual damages. Fortune Bridge Co. v. Department of Transp., 242 Ga. 531, 532 (1978); Adams v. D & D Leasing Co. of Ga., Inc., 191 Ga. App. 121, 122 (1989).

The Court concludes the Full Recourse Liability Clause is not a liquidated damages clause and is therefore not an unenforceable penalty.[2] In CSFB 2001-CP-4 Princeton Park Corporate Center, LLC v. SB Rental I, LLC, 980 A.2d 1 (N.J. Super.

---

[2] The Court could only locate two Georgia cases addressing full recourse liability clauses in the context of otherwise non-recourse loans and neither case addressed the validity of such clauses in the liquidated damages context. See Grace v. Golden, 206 Ga. App. 416, 417 (1992) (upholding a provision in a security deed attached to a note that limited the borrower's liability to the underlying property); Senske v. Harris Trust & Savings Bank, 233 Ga. App. 407, 410-411 (1998) (holding that non-recourse clause prevented personal liability on the Note but that guaranty clause specifically providing personal liability overrode the non-recourse clause).

Ct. App. Div. 2009), the court upheld a full recourse liability clause when the borrower obtained $400,000 in subordinate financing without the written consent of the initial lender, as required by the liability clause. The court noted that "[t]he parties knew and agreed to the carve-out of the non-recourse loan, which, because it affects the value of the collateral, was a material term in acquiring the $13 million loan." Id. at 4. The court held that the full recourse exception was not a liquidated damages provision because it only allocated liability and provided for actual damages instead of stipulated or predicted damages. Id. at 4-5. Likewise, in Heller Financial, Inc. v. Lee, No. 01 C 6798, 2002 WL 1888591 (N.D. Ill. Aug. 16, 2002), the court, applying Illinois law, held that a carve-out from an otherwise non-recourse loan "is not a liquidated damages provision because it provides for only actual damages ... the amount left on the loan at the time of the breach." Id. at *5.

Here, the Full Recourse Liability Clause is not a liquidated damages clause because, like the clauses in CSFB and Heller, it does not fix potential damages. Rather, "it provides for only actual damages ... the amount left on the loan at the time of the breach." Heller, 2002 WL 1888591, at *5. Wells Fargo is seeking actual damages, the amount remaining due on the loan issued to Mitchell's Park. There are no stipulated or predicted damages contained in the clause. Like the parties in CSFB, the parties here "agreed to the carve-out of the non-recourse loan, which, because it

affects the value of the collateral, was a material term in acquiring the" loan. CSFB, 980 A.2d at 4.

Further, in 51382 Gratiot Avenue Holdings, LLC v. Chesterfield Development Co., 835 F. Supp. 2d 384, 393-94 (E.D. Mich. 2011)(applying Michigan law), the court granted summary judgment to a lender when the borrower triggered full recourse liability by violating a covenant not to "become insolvent or fail to pay its debts and liabilities from its assets as the same shall become due," a covenant nearly identical to one of the single-purpose entity requirements Mitchell's Park violated in the instant case. The court in Chesterfield concluded that the unambiguous language of the contract showed that a failure to pay on the loan at issue violated the covenant. Id.

Finally, the Court notes that the vast majority of cases addressing full recourse liability clauses uphold the application of the clauses. See, e.g., U.S. Bank v. Kobernick, 454 Fed. Appx. 307, 313-14 (5th Cir. 2011) (affirming summary judgment on behalf of lender when borrower attached the collateral to a voluntary bankruptcy triggering a full recourse liability provision); 111 Debt Acquisition Holdings, LLC v. Six Ventures Ltd., 413 Fed. Appx. 824, 830 (6th Cir. 2011) (affirming summary judgment on behalf of a lender when a guarantor triggered a full recourse exception by filing for bankruptcy on behalf of the borrower, despite the objections of other guarantors to the loan); 51382 Gratiot Avenue Holdings, LLC v. Chesterfield

Development Co., 835 F. Supp. 2d 384, 393-94 (E.D. Mich. 2011) (upholding application of full recourse liability clause when borrower violated covenant to remain solvent and pay liabilities as they become due by defaulting on the loan); Wells Fargo Bank, NA v. Cherryland Mall Limited Partnership, 812 N.W.2d 799, 815 (Mich. Ct. App. 2011) (concluding that the borrower's failure to remain solvent "breached the covenant to maintain its status as a [single-purpose entity] and triggered the full recourse provisions of the mortgage."); Blue Hills Office Park LLC v. J.P. Morgan Chase Bank, 477 F. Supp. 2d 366, 378-80 (D. Mass. 2007) (upholding the application of a non-recourse clause that prevented the borrower from transferring the mortgaged property); LaSalle Bank N.A. v. Mobile Hotel Properties, LLC, 367 F. Supp. 2d 1022, 1029-30 (E.D. La. 2004) (concluding that the borrower was liable for the full recourse amount because its amendment of its articles of incorporation violated the single-purpose entity requirements listed in the loan documents); First Nationwide Bank v. Brookhaven Realty Assoc., 223 A.D.2d 618, 619-20 (N.Y. App. Div. 1996) (upholding a non-recourse liability clause that imposed liability on the borrower if the borrower commenced bankruptcy proceedings that were not dissolved or dismissed within 90 days); Federal Deposit Insurance Corp. v. Prince George Corp., 58 F.3d 1041, 1045-46 (4th Cir. 1995) (concluding that the borrower's filing for bankruptcy triggered full liability exceptions in the note).

Based on the above authority, the Court holds that the liquidated damages analysis is inapplicable to the Full Recourse Liability Clause. Therefore, the contract should be enforced as written, and the Defendants' motion for partial summary judgment should be denied.

D. The Plaintiff's Motion for Summary Judgment

The Plaintiff seeks summary judgment on Count I (breach of contract by Mitchell's Park), Count II (breach of contract by Bright), and Count IV (attorneys fees). In their responsive briefs, the Defendants do not dispute the breach of contract by Mitchell's Park or the breach of the Guaranty by Bright. The Defendants similarly do not dispute the Plaintiff's request for attorneys fees. Indeed, the Defendants' response to the Plaintiff's motion for summary judgment focuses entirely on the Defendants' own motion for partial summary judgment, which the Court has determined should be denied. Therefore, the Plaintiff's motion for summary judgment should be granted.[3]

The Plaintiff requested $4,243,881.06, jointly and severally, from Mitchell's Park and Bright for principal, prejudgment interest, late charges, and yield

---

[3] The Plaintiff, in its brief in support of its motion for summary judgment, states that it will forego seeking damages for waste and voluntarily dismiss Count III of the lawsuit based on this Court's granting of its motion for summary judgment on Counts I, II, and IV. (See Pl.s' Br. in Supp. of Pl.s' Mot. for Summ. J. at 4, n.2).

maintenance premium, as well as attorneys fees in the amount of $272,897.00. The Plaintiff made this request in its motion on May 2, 2012, and noted it would update the Court with further information. The Court has not received any updates. Further, pursuant to O.C.G.A. § 13-1-11(b)(1), if the court awards "attorney's fees in an amount greater than $20,000, the party required to pay such fees may, prior to the entry of judgment, petition the court seeking a determination as to the reasonableness of such attorney's fees." Accordingly, the Court will refrain from entering final judgment with respect to the amount due in order to allow the parties to supplement the record with interest due, fees incurred, and any other petitions relating to the amount owed.

## IV. Conclusion

For the reasons set forth above, the Defendants' Renewed Motion to Dismiss for Lack of Subject Matter Jurisdiction [Doc. 65] is DENIED, Defendants' Motion for Partial Summary Judgment [Doc. 66] is DENIED, and the Plaintiff's Motion for Summary Judgment [Doc. 67] is GRANTED. The parties are ORDERED to submit to the Court evidence of the total deficiency on the loan, the total amount of attorneys fees due, and any objections thereto.

SO ORDERED, this 11 day of October, 2012.


/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge